BUZA and wife, Respondents, v. WOJTALEWICZ and wife, Appellants.

*No. 164. Argued October 7, 1970.—Decided November 3, 1970.*
(Also reported in 180 N. W. 2d 556.)

For the appellants there was a brief by *Atwell & Atwell* of Stevens Point, and oral argument by *W. E. Atwell, Jr.*

For the respondents there was a brief and oral argument by *Herman J. Glinski* of Stevens Point.

HANLEY, J. Three issues are presented on this appeal:

(1) Are the appellants entitled to the 20-foot strip of land under the doctrine of acquiescence;

(2) Are the appellants entitled to the 20-foot strip of land under the doctrine of estoppel; and

(3) Should this court exercise its power of discretionary reversal under sec. 251.09, Stats., because the result below was inequitable?

### *Acquiescence.*

The doctrine of acquiescence is a supplement to the older and harsher rule of adverse possession which held that adverse intent was the first prerequisite of adverse

possession. This meant that in order for the adverse possessor to start the twenty-year period running, he must commence his possession with knowledge that the land he was encroaching upon was not his and with an intent to dispossess the true owner. This meant that one who occupied part of his neighbor's land, due to an honest mistake as to the location of his boundary, could never start the statute running because he never formed the requisite adverse intent.

The harsh result of this rule soon became apparent in many jurisdictions and courts began to hold that land could be acquired by adverse possession, even though adverse intent was absent, if the true owner acquiesced in such possession for a period of twenty years. It is important to note that initially the period of time required for adverse possession continued to be twenty years even when the acquiescence version of the doctrine was applied.

In Wisconsin there are two time periods specified by statute for the acquisition of real property by adverse possession. Sec. 893.06, Stats., provides as follows:

"**Presumption of adverse holding under conveyance or judgment.** Where the occupant or those under whom he claims entered into the possession of any premises under claim of title, exclusive of any other right, founding such claim upon some written instrument, as being a conveyance of the premises in question, or upon the judgment of some competent court, and that there has been a continual occupation and possession of the *premises included in such instrument* or judgment or of some part of such premises under such claim for 10 years, the premises so included shall be deemed to have been held adversely; except that when the premises so included consist of a tract divided into lots the possession of one lot shall not be deemed the possession of any other lot of the same tract." (Emphasis supplied.)

This is the ten-year statute and, according to *Zuleger v. Zeh* (1915), 160 Wis. 600, 150 N. W. 406, the land in dispute must have been included in the description in the

adverse possessor's deed. Then, if the grantee's deed or the power of his grantor, etc., is later found to be flawed, he will be deemed to have acquired title in spite of such flaw if he has held for ten years.

On the other hand, if an adverse possessor occupies land adjacent to that land described in his deed, but not within the calls of such description, he comes under sec. 893.08, Stats., which provides as follows:

"**Extent of possession not founded on writing, judgment, etc.** When there has been an actual continued occupation of any premises under a claim of title, exclusive of any other right, but not founded upon any written instrument or any judgment or decree, the premises so actually occupied, and no other, shall be deemed to be held adversely."

Sec. 893.10 provides that sec. 893.08 is a twenty-year statute.

Thus, the general rule is that adverse possession by a grantee of property adjoining that described in his deed, but not included in the calls of such deed, must continue for a period of twenty years.

In the case at bar, the 20-foot strip in question is not within the calls of the description found in the Wojtalewicz deed, because that deed says that the starting point of the Wojtalewicz property is on the west side of Highway 51 "at a point 160 feet due north from the south line of said forty." Therefore, Wojtalewicz cannot come under sec. 893.06, Stats., the ten-year statute. Nor, strictly speaking, can Wojtalewicz come under sec. 893.08, because that is the twenty-year statute, and, as stated earlier, the appellants had only occupied for nineteen years, eight months, and nineteen days when Buza tolled the running of the statute by his survey.

However, as noted by former Chief Justice GEORGE R. CURRIE in *Nagel v. Philipsen* (1958), 4 Wis. 2d 104, 108, 109, 90 N. W. 2d 151:

". . . there are exceptions to the general rule, that the fence must have stood for the period of the statute of

limitations in order for the acquiescence to be conclusive on the issue of the location of a boundary line. The cases of *Rottman v. Toft* (1925), 187 Wis. 558, 204 N. W. 585, and *Pickett v. Nelson* (1888), 71 Wis. 542, 37 N. W. 836, illustrate one of such exceptions. . . ."

The *Rottman* and *Pickett Cases, supra,* hold that where there is a dispute as to the location of a boundary line resulting in an agreement between the owners establishing such disputed line, and a fence is located on such line so established by agreement, which is long acquiesced in by such adjoining owners, these facts are conclusive as to the location of the line, even though the period of acquiescence may fall short of twenty years.

In *Peters v. Reichenbach* (1902), 114 Wis. 209, 215, 90 N. W. 184, it is pointed out that, without an original dispute prior to the erection of the fence, acquiescence short of twenty years is insufficient to render the location of the fence conclusive as to the location of the true boundary line.

Wojtalewicz cannot use either of the fences in this case to come under the *Rottman-Pickett* exception to the twenty-year rule because, as to the south fence, it is not on a common border between the two properties and even if it were, it was not erected as the result of a dispute; as to the north fence, it does represent a common border between the Buza and Wojtalewicz properties, but there is no evidence to show that it was erected as the result of a dispute.

The *Nagel* opinion, *supra,* notes additional exceptions to the twenty-year rule.

One of these is found in *Thiel v. Damrau* (1954), 268 Wis. 76, 81, 66 N. W. 2d 747, where the court said:

". . . where adjoining owners take conveyances from a common grantor *which describe the premises conveyed by lot numbers,* but such grantees have purchased with reference to a boundary line then marked on the ground, such location of the boundary line so established by the common grantor is binding upon the original grantees

and all persons claiming under them, irrespective of the length of time which has elapsed thereafter." (Emphasis supplied.)

Wojtalewicz cannot qualify for the *Thiel* exception to the twenty-year rule because the common grantor in the case at bar, John Bukowski, did not convey by "lot numbers" as was done by the common grantor in *Thiel.* Bukowski conveyed by metes and bounds. In *Thiel,* the location of the boundary line was not described in the deed, hence resort to evidence outside the deed to find the boundary's location was allowed; and the fence was such evidence.

In *Grosshans v. Rueping* (1967), 36 Wis. 2d 519, 528, 153 N. W. 2d 619, this court quoted with approval from *Elofrson v. Lindsay* (1895), 90 Wis. 203, 205, 63 N. W. 89:

" '. . . where the description of the premises in a deed is definite, certain, and unambiguous, extrinsic evidence to show acquiescence in a different location is inadmissible, . . .' "

In this case, the deeds are unambiguous. If everyone had occupied from the true forty line, as the deeds directed them to do, there would have been no dispute. Of course, finding the forty line would have required a survey, and, as Bukowski rather ruefully observed at one point, "In those days they claimed they didn't need a survey." "Those days," regrettably in the view of many, are gone. Buza recognized this and ordered a survey at the eleventh hour.

Hence, although the equities in this case are in favor of the appellants, it appears under the law, the doctrine of acquiescence is inapplicable to the facts of this case.

### *Estoppel.*

The appellants contend the doctrine of estoppel is applicable to the facts in this case. We do not agree.

We have already discussed acquiescence and, insofar as boundary disputes are concerned, we are unable to discern from the cases any functional differences between acquiescence and estoppel.

These two terms do not represent separate doctrines or concepts. Acquiescence is a condition or fact which, if proven, results in an estoppel against the party who has acquiesced.

In *Hartung v. Witte* (1884), 59 Wis. 285, 299, 18 N. W. 175, this court stated:

". . . Where there is an agreement or acquiescence in a wrong boundary, when the true boundary can be ascertained from the deed, it is treated both in law and equity as a *mistake,* and neither party is estopped from claiming to the true line. . . ."

Generally, a party is not entitled to invoke the doctrine of estoppel unless he can show detrimental reliance.

In this case Wojtalewicz has relied to his detriment on boundaries established by Buza, but he had no right to so rely. On the contrary, he had an affirmative duty to locate his true boundaries and stay within them. Short of twenty years, he cannot be relieved of that duty, and Buza cannot be estopped from asserting his true boundaries.

*Discretionary reversal under sec. 251.09, Stats.*

In *Lorenz v. Wolff* (1970), 45 Wis. 2d 407, 173 N. W. 2d 129, this court made it clear that the rule usually applied in granting a discretionary reversal—that the evidence and the law must be such that the appellant probably should have won—is not the sole criteria governing this court's exercise of its power under sec. 251.09, Stats. The court noted that discretionary reversal was warranted when it is probable that justice has miscarried for any reason.

But even under this liberal standard appellants are unable to point to "any reason" why justice has miscarried. The trial judge correctly applied the existing case law, and the appellants are not entitled to a reversal.

We conclude that this case has been tried on its merits. The trial court has rendered a judgment which draws the boundary between the property of the parties in accordance with their respective deeds.

*By the Court.*—Judgment and order affirmed.