Richard E. **RADSPINNER** and Irene R. Radspinner, Plaintiffs and Appellants,

v.

Fay W. **CHARLESWORTH** and Eva Charlesworth, Defendants and Appellees.

Warren **CHARLESWORTH**, Plaintiff and Appellee,

v.

Richard E. **RADSPINNER** and Irene R. Radspinner, Defendants and Appellants.

Civ. Nos. 10819, 10820.

Supreme Court of North Dakota.

June 10, 1985.

---

William R. Mills, of Mills & Moore, Bismarck, for appellants Richard E. Radspinner and Irene R. Radspinner.

Richard B. Baer, of Baer & Asbridge, Bismarck, for appellees Fay W. Charlesworth, Eva Charlesworth, and Warren Charlesworth.

VANDE WALLE, Justice.

Richard and Irene Radspinner appeal from an amended judgment entered by the District Court of Burleigh County on July 27, 1984. We affirm.

The Radspinners, in two separate transactions, gave a 1½-acre tract of land near their home to Fay and Eva Charlesworth. The transfers were accomplished by two warranty deeds containing no restrictions or reservations. The parties also executed a mutual-access easement, each granting to the other an easement over the north 30 feet of their respective properties.

The Charlesworths had intended to build a retirement home on the property to be near their long-time friends, the Radspinners, but a dispute arose between the parties and the Charlesworths deeded the property to their son, Warren. The Radspinners brought this action against the Charlesworths in March of 1982, alleging fraud and breach of contract. The Radspinners claimed that there was an oral agreement between the parties that the Charlesworths were to sell the land back to the Radspinners if they did not build on it; that the Charlesworths were not to build on or sell a portion of the property referred to as "the park" during the Radspinners' lifetimes; and that the Radspinners were to have use of "the park." The Charlesworths deny the existence of such an agreement, but do admit that there were discussions to the effect that "the park" would not be built upon and that the families would use it as a park. Warren Charlesworth brought a separate action against the Radspinners alleging slander of title and interference with use of the property. The actions were consolidated and tried to the court without a jury.

The court held that Warren owned the disputed property in fee simple with no restrictions. The court awarded the Radspinners $100 as damages against Warren for their expense in removing brush and large stumps placed on their land by War-

ren when he cleared the easement property. The court dismissed the parties' other claims.

The Radspinners appealed to this court, and we vacated the judgment and remanded to the district court for further findings of fact and conclusions of law. *Radspinner v. Charlesworth*, 346 N.W.2d 727 (N.D. 1984). On remand, the district court issued its supplemental memorandum opinion and order for amended judgment, holding that Warren owned the property in fee simple subject to the Radspinners' easement. In all other respects, the court adhered to its previous judgment. The amended judgment was entered on July 27, 1984, and the Radspinners appealed.

The following issues are raised on this appeal:

 I. Were the Charlesworths liable for breaching an oral agreement regarding "the park"?

 II. Should a constructive trust have been placed upon the property, requiring the Charlesworths to hold "the park" in trust for the Radspinners' lifetime use?

 III. Did the trial court err in refusing to award damages for loss of trees within the access easement and in awarding only $100 for the cost of removing the brush and stumps placed upon the Radspinners' property?

## I

The Radspinners assert that the court erred in refusing to enforce the alleged oral agreement between the parties regarding "the park," which they contend was part of the consideration for the conveyance.

The Charlesworths contend that the parol-evidence rule, as codified in part in Section 9–06–07, N.D.C.C., precludes enforcement of any oral agreement between the parties:

> "*9–06–07. Written contract supersedes oral negotiations.*—The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."

The parol-evidence rule is not a rule of evidence, but rather one of substantive law. *Ell v. Ell*, 295 N.W.2d 143 (N.D. 1980); *Gajewski v. Bratcher*, 221 N.W.2d 614 (N.D.1974). Thus, evidence of oral negotiations and agreements which preceded the written contract may not be offered to vary the terms expressed in the written contract, nor may such agreements be separately enforced. See *Northwestern Equipment, Inc. v. Tentis*, 74 N.W.2d 832 (N.D.1956). A deed is a written contract, and is subject to the rule. *Gajewski v. Bratcher, supra; Zimmer v. Bellon*, 153 N.W.2d 757 (N.D.1967).

In *Gajewski v. Bratcher, supra*, 221 N.W.2d at 626, we discussed the application and effect of the parol-evidence rule:

> "The parol evidence rule has been variously defined and has been best stated as follows:
>
> ' " ' "Where parties, *without any fraud or mistake*, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement;" * * * "all preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract * * * and '*unless fraud, accident, or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol* evidence.' " ' " ' *Associated Hardware Supply Co. v. Big Wheel Distributing Company*, 355 F.2d 114, 119 (3d Cir.1966), 17 A.L.R.3d 998."

The Radspinners concede that they failed to prove fraud, and there have been no allegations of accident or mistake. Therefore, the terms of the deeds may not be altered or varied by evidence of the prior oral agreement.

The Radspinners contend that the oral agreement falls within an exception to the parol-evidence rule because it constitutes part of the consideration for the deeds, and the failure of the deeds to fully recite the consideration indicates that they were not intended as a total integration of the parties' agreement. We were presented with an identical argument in *Zimmer v. Bellon, supra,* where the plaintiff conveyed property to the defendant by warranty deed, but later claimed that there had been a prior oral agreement between the parties that certain fixtures and a dwelling would be excepted from the conveyance. The plaintiff argued that the oral exclusion of fixtures was part of the consideration for the conveyance. Although noting that parol evidence may be admitted to prove that the actual consideration differs from that recited in the deed, we held that this exception does not permit a party to vary the express terms of the deed under the guise of showing the true consideration:

"But this exception ' * * * is never applied to the extent of permitting a party to show that the agreement was other than that set forth in the writing.' *Clark v. Henderson, supra* [62 N.D. 503] 244 N.W. [314 (1931) ] p. 316. And even more specifically, the rule of Alsterberg v. Bennett, supra, precludes, under the guise of proving the consideration for a conveyance, an adding to or a taking from the other terms of the deed.

"Examination of the evidence leads to the inescapable conclusion that here Mrs. Zimmer ostensibly, on the ground that the deed is incomplete in its statement of consideration, is endeavoring to prove something different than consideration, of which there is no indication or suggestion in the deed, and so seeks to impose other and further contractual obligations upon the defendant grantee. This was an attempt to show that the agreement of the parties was other than as set forth in the deed, and in direct contradiction thereto, by engrafting additional terms on the conveyance. It is clear from the cited authorities that, as between plaintiff Mrs. Zimmer and defendant Adam

Bellon, parties to the warranty deed, testimony relating to any oral exclusion of fixtures from operation of the deed was inadmissible on trial of this case." *Zimmer v. Bellon, supra,* 153 N.W.2d at 762.

■ In this case, the deeds convey the property in fee simple to the Charlesworths. The Radspinners are attempting to vary the express terms of the deeds under the guise of showing the true consideration. This is impermissible under Section 9–06–07 and our holding in *Zimmer.*

We have held, in *Royse v. Easter Seal Society for Crippled Children,* 256 N.W.2d 542, 545 (N.D.1977), that exceptions or reservations must be clearly expressed in the deed:

"The general rule is that because a grantor is presumed to have made all the reservations or exceptions he intended to make the reservations must be clearly expressed in the deed. See 6 Powell on Real Property § 892.

. . . . .

"We believe exceptions or exclusions of property should be set forth in the granting clause with the same prominence as the property granted, or, if placed elsewhere, should be so explicit as to leave no room for doubt. Were we to endorse anything short of this we would be encouraging practices which would lend themselves readily to fraud and deception. This we propose not to do.

. . . . .

"Easter Seal has attempted to show what the parties actually thought was being passed in the deed, but, of course, that sort of testimony cannot be resorted to where the language written in the deed itself is not ambiguous. We will not strain to find an ambiguity where none appears on the face of the instrument."

■ We conclude that the alleged oral agreement between the Radspinners and the Charlesworths was superseded by the subsequent deeds and is unenforceable.

## II

The Radspinners contend that the court erred in refusing to impose a constructive trust upon "the park." They contend that, to the extent that the Charlesworths admitted the existence of an oral agreement regarding "the park," a constructive trust may be imposed requiring the Charlesworths to hold "the park" in trust for the Radspinners' lifetime use.[1]

Notwithstanding the statute of frauds and the parol-evidence rule, a constructive trust may be imposed upon land based upon prior oral agreements when the requisites of Section 59–01–06, N.D.C.C., are met. See *Wildfang-Miller Motors, Inc. v. Miller*, 186 N.W.2d 581 (N.D.1971). Under our statutory scheme, a constructive trust may be imposed by the courts in order to do equity and prevent unjust enrichment when title to property is acquired by fraud, duress, undue influence, or is acquired or retained in violation of a fiduciary duty or confidential relationship. See *Weigel v. Rippley*, 283 N.W.2d 123 (N.D. 1979); *Wildfang-Miller Motors, Inc. v. Miller*, *supra*. The party seeking imposition of a constructive trust bears the burden of proving the existence of the trust by clear and convincing evidence. *Matter of Estate of Bendickson*, 353 N.W.2d 320 (N.D.1984); *McCarney v. Knudsen*, 342 N.W.2d 380 (N.D.1983); *Weigel v. Rippley*, *supra*.

We conclude, however, that no constructive trust may be imposed upon realty when the party seeking imposition of the trust has totally failed to provide a description of the property. A court cannot impose a constructive trust upon an undefined area of land. See *Andre v. Morrow*, 106 Idaho 455, 680 P.2d 1355 (1984) [Bistline, J., concurring in part and dissenting]; see also *Dabney v. Philleo*, 38 Cal.2d 60, 237 P.2d 648 (1951); *Maykus v. First City Realty and Financial Corp.*, 518 S.W.2d 887 (Tex.Civ.App.1974). Judgments affecting title to real estate must describe the land in question with certainty and specificity. See, e.g., *Newman v. Cornelius*, 3 Cal.App.3d 279, 83 Cal.Rptr. 435 (1970); *Daluiso v. Boone*, 269 Cal.App.2d 253, 75 Cal.Rptr. 287 (1969); *Standall v. Teater*, 96 Idaho 152, 525 P.2d 347 (1974); *Engelland v. LeBeau*, 680 S.W.2d 435 (Mo. App.1984); *Tripp v. Harryman*, 613 S.W.2d 943 (Mo.App.1981); *Catlett v. Catlett*, 630 S.W.2d 478 (Tex.Civ.App.1982). This is a logical extension of the general rule, long recognized in this State, that an instrument which conveys title to real property must contain a description adequate to identify the land intended to be conveyed. See *Magnusson v. Kaufman*, 65 N.W.2d 289 (N.D.1954); *State v. Rosenquist*, 78 N.D. 671, 51 N.W.2d 767 (1952); *Mitchell v. Nicholson*, 71 N.D. 521, 3 N.W.2d 83 (1942).

The party seeking imposition of a constructive trust has the burden of proof. E.g., *Matter of Estate of Bendickson*, *supra*; *Weigel v. Rippley*, *supra*. Thus, it was incumbent upon the Radspinners to

---

1. Although in the first appeal we specifically noted that evidence of an oral agreement may be admissible to establish a constructive trust [see *Radspinner v. Charlesworth*, 346 N.W.2d 727, 729 n. 1 (N.D.1984)], the trial court continues to base its holding in part on the inadmissibility of such evidence. The trial court states in its supplemental memorandum opinion:

 "If I am mistaken as to the status of the law on this matter and oral testimony is admissible, I would find that there was an agreement by the Charlesworths that they would not build on the part of the property referred to by the Radspinners as 'the park,' and that the Radspinners would be entitled to obtain an injunction against the Charlesworths should they ever attempt to build there."

 However, we will not reverse a proper judgment merely because the trial court's reasoning in arriving at the judgment was incorrect. E.g., *Yon v. Great Western Development Corp.*, 340 N.W.2d 43 (N.D.1983); *North Dakota State Water Commission v. Board of Managers*, 332 N.W.2d 254 (N.D.1983); *Avco Financial Services v. Schroeder*, 318 N.W.2d 910 (N.D.1982). In addition to our holding today that the lack of an adequate description of the property precludes imposition of a constructive trust, we note that the trial court made no specific findings of fact regarding the necessary elements of a constructive trust. See Section 59–01–06, N.D.C.C.; *Wildfang-Miller Motors, Inc. v. Miller*, 186 N.W.2d 581 (N.D.1971). Thus, we conclude that it would serve no useful purpose at this point to again remand the matter to the district court.

present evidence sufficiently describing the property in question. No witness ever testified to the boundaries of "the park" or the area encompassed by it. The trial court clearly could not have described the property in any judgment imposing a constructive trust. Any attempted description would have been pure speculation by the court.

■ At oral argument, counsel for the Radspinners suggested that an adequate description of the property could be ascertained by using a map and aerial photograph contained in the record. We note that "the park" is not delineated on either the map or the aerial photograph, and no witness specifically delineated the location of "the park" using the map or photograph. Any attempt to locate "the park" using the map and photograph would be pure speculation, and would fall far short of the certainty and specificity required of a description in an instrument or judgment affecting title to land.

We conclude that the Radspinners are not entitled to imposition of a constructive trust upon "the park" because they have failed to present evidence identifying "the park" with the requisite certainty and specificity.[2]

### III

The Radspinners assert that the trial court erred in refusing to award damages for Warren's removal of trees on their property within the easement.

On May 27, 1981, the Radspinners and Fay Charlesworth executed a document entitled "Grant of Common Access Ease-ment." By its terms, the Radspinners granted an easement across the north 30 feet of their property to Fay Charlesworth, and he granted to the Radspinners an easement over the north 30 feet of his property.[3] The grant expressly states that the purpose of the easement is for access of the parties and their heirs, successors, and assigns to their respective properties. The Charlesworths subsequently transferred their interest in the property, including the easement, to their son, Warren. In preparing to build an improved road for access to his property, Warren cut a number of trees within the easement area. The Radspinners claim that it was unnecessary to cut all of these trees, and sought damages for loss of the trees.

Section 47–05–07, N.D.C.C., provides:

> "*47–05–07. Servitude—Extent.*—The extent of a servitude is determined by the terms of the grant or the nature of the enjoyment by which it was acquired."

See *Minnkota Power Cooperative, Inc. v. Lake Shure Properties*, 295 N.W.2d 122 (N.D.1980).

■ The trial court in the instant case found that the conduct of Warren Charlesworth in removing trees on the easement was not inconsistent with or in excess of the rights granted to him in the easement. The determination whether a particular use of an easement is reasonable is a question of fact. *Minnkota Power Cooperative, Inc. v. Lake Shure Properties, supra.* Our review is therefore limited to a determination of whether the finding is clearly erroneous. Rule 52(a), N.D.

---

2. Our holding today is not in conflict with *Ward v. Shipp*, 340 N.W.2d 14 (N.D.1983). In *Ward,* we remanded for additional evidence on the exact description of the land in dispute. Our holding was based, however, upon the conclusion that the trial court had abused its discretion by unreasonably refusing to allow additional time for the arrival of a witness who would testify to the exact dimensions of the disputed land. In *Ward,* the land in dispute was between an old fence line and a new fence line, and the parties did not dispute the location of the land. Some testimony regarding the dimensions of the land had already been presented, and, when

the court indicated concern over the sufficiency of the description, a witness was directed by plaintiff's counsel to go out and measure it. In this case, despite two opportunities to do so, the Radspinners have presented no evidence of the exact dimensions of "the park" and there is no indication that the parties agree where the exact boundaries of "the park" lie. *Ward* is thus clearly distinguishable.

3. The parties have not raised any issue regarding Eva Charlesworth's failure to sign the "Grant of Common Access Easement."

R.Civ.P. We conclude that the court's finding is not clearly erroneous.

The Radspinners also contend that the trial court erred in awarding only $100 in damages for the cost of removing debris which was placed on their land by Warren when he cleared the easement. The Radspinners introduced evidence indicating that the cost of removing the debris was $798.20. The trial court, in effect, held that the reasonable value of these services was $100.

 The trial court's determination as to the amount of damages is a finding of fact which will not be set aside on appeal unless it is clearly erroneous, pursuant to Rule 52(a), N.D.R.Civ.P. *Pfliger v. Peavey Co.*, 310 N.W.2d 742 (N.D.1981); *F-M Potatoes, Inc. v. Suda*, 259 N.W.2d 487 (N.D. 1977). We will not interfere with an award of damages unless it is so excessive or inadequate as to be without support in the evidence. *Pfliger v. Peavey Co., supra; Johnson v. Monsanto Co.*, 303 N.W.2d 86 (N.D.1981). We have reviewed the record and conclude that the trial court's award of $100 as damages is not clearly erroneous.

The judgment of the district court is affirmed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.